**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **STEVEN J. EDELSTEIN** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:16CV01353 (WWE)(JGM)** |
| **v.** | : | |
| | : | |
| **LUCAS BRAND EQUITY, LLC,** | : | |
| **HYD USA, LLC, AND JAY LUCAS** | : | |
| **Defendants.** | : | **April 6, 2017** |

**POST-HEARING BRIEF ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT
REMEDY AND MOTION FOR DISCLOSURE**

**I.     INTRODUCTION**

The Plaintiff, Steven J. Edelstein, hereby submits this Memorandum of Law, supporting

his Application for Prejudgment Remedy ("PJR") and Motion for Disclosure filed on or about

December 20, 2016.  A hearing was held on this matter on February 23, 2017 before the Hon.

Joan G. Margolis, during which evidence was received by the Court.  For the reasons to follow,

Plaintiff is entitled to the prejudgment remedy sought.

**II.     LEGAL STANDARD**

Conn. Gen. Stat. § 52-278a *et seq*. provides litigants a right to seek prejudgment remedies

to secure a potential judgment on their claims.  In order to obtain a prejudgment remedy, the

applicant need only establish the validity of his claim.  *State v. Ham*, 253 Conn. 566, 569 (2000).

Conn. Gen. Stat. § 52-578d(a) provides that if probable cause is established that judgment will be

rendered in the applicant's favor in the amount sought, the PJR should be granted. The hearing in

probable cause for the issuance of a prejudgment remedy is not contemplated to be a full-scale

trial on the merits of the plaintiff's claim but concerns only whether and to what extent the

applicant is entitled to "have the property of the defendant held in the custody of the law pending

adjudication of the merits of that action." *Soltesz v. Miller*, 56 Conn.App. 114, 116 (1999). The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. *Giordano v. Giordano*, 39 Conn. App. 183, 206 (1995). For purposes of Conn. Gen. Stat. § 52-278d, "probable cause" is a "bona fide belief in the existence of facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action." *Tyler v. Schnabel*, 34 Conn. App. 216, 219-220 (1994). "Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence." *Ledgebrook Condominium Assn., Inc. v. Lusk Corp.,* 172 Conn. 577, 584, 376 A.2d 60 (1977); *see also TES Franchising v. Feldman*, 286 Conn. 132 (2008)(citing *Ledgebrook*); *Fischel v. TKPK, Ltd*, 34 Conn.App. 22, 24 (1994)("Probable cause for the purposes of the PJR statutes is a flexible common sense standard that does not demand that a belief be correct or more likely true than false.")

A prejudgment remedy is appropriate and available to plaintiffs in employment matters. *See Lehmann v. Connecticut Legal Rights Project, Inc.,* 2008 WL 4634946 (Conn.Super. September 19, 2008) (court found probable cause and prejudgment remedy was granted); *Benton v. Simpson*, 2002 WL 180931 (Conn.Super. Jan. 10, 2002) (court found probable cause as to plaintiffs' emotional distress claims and granted their PJR application against former employer); *McNally v. Spectron Energy, Inc.*, 1995 WL 749545 (Conn.Super. Nov. 29, 1995) (court granted PJR application of former employee to secure a potential judgment on breach of contract claim against former employer); *Haxhi v. Moss*, 1990 WL 283982 (Conn.Super. Jul. 2, 1990) (prejudgment remedy granted in defamation action).

2

### III.    SUMMARY OF EVIDENCE PRESENTED AT THE PJR HEARING

Plaintiff, Steven Edelstein, began working for Defendants HYD USA and Lucas Brand Equity on September 1, 2015.  See 2/23/17 Hearing Transcript at 5, attached as Ex. A.  Lucas Brand Equity is a "private equity, limited fund portfolio holding company that acquires emerging brands, primarily in the health, beauty, wellness, and personal care industries."  Ex. A at 20. HYD USA was one of the portfolio companies of Lucas Brand Equity.  Ex. A at 20.  According to his hire letter, Plaintiff was hired by Mr. Lucas "at the salary of $120,000 per year,  plus health care benefits and related items provided by the company."  See Hearing Ex. 1, attached as Ex. 1 to Ex. A.  The hire letter, sent by Mr. Lucas, refers to "Employment Status," and confirms "[Plaintiff's] employment as Chief Operating Officer of HYD for Men, a portfolio company of Lucas Brand Equity, LLC."  See Ex. A at 7-8, Ex. 1 to Ex. A.  In a subsequent letter regarding "Verification of Employment," issued by Michael Lanzaro (who is identified in the letter as "Accountant for Lucas Brand Equity – Hyd USA"), Plaintiff was confirmed as "Chief Operating Officer for Lucas Brand Equity—HYD USA." See Ex. A at 7-8, Ex. 2 to Ex. A.  Consistent with the contents in both Exhibits 1 and 2 to Ex. A, Plaintiff was employed by both Lucas Brand Equity and by HYD USA.  Ex. A at 14.  Plaintiff's employment as Chief Operating Officer was a full time position, and it was Plaintiff's one and only job.  Ex. A at 28.

In his role as Chief Operating Officer, Plaintiff was responsible for a number of operational activities, including manufacturing and distribution.   Ex. A at 22.  Jay Lucas was responsible for overseeing the performance of HYD USA.  Mr. Jay Lucas is Managing Director of Lucas Brand Equity, Ex. 1 to Ex. A.  In his role as COO, Plaintiff reported to Mr. Lucas and to Ms. Karen

Ballou, who was a senior partner and co-CEO of Lucas Brand Equity.  Ex. A at 24-26.  Among

other things, Plaintiff was required to get approval from Ms. Ballou for certain financial matters,

including purchases made for HYD USA.  Ex. A at 25-27.  Mr. Lucas told Plaintiff that he had

the authority to determine when and how Plaintiff would be paid as Chief Operating Officer, Ex.

A at 115, and made representations that he would attempt to take care of the shortage in

Plaintiff's compensation.  Ex. A at 116.

For the compensation Plaintiff received from Lucas Brand Equity and HYD USA in 2015,

Plaintiff received tax forms from both HYD USA and Lucas Brand Equity, LP, reflecting

compensation of $15,000 from the latter and $25,00 from the former.  Ex. 4 to Ex. A, Ex. A at

41-43.

Plaintiff's $120,000 annual compensation was paid to him in semi-monthly direct deposits

of $5000, paid on the 8th and 22nd of each month.  Ex. A at 43, 44.  The payments were "wired"

to Plaintiff's bank account.  Ex. A at 43.

Several months into his employment, Plaintiff learned that he was being paid as a "1099

employee, and raised concerns about his status as a 1099 employee to Mr. Lucas, Ms. Ballou, and

Mr. Lanzaro.  Ex. A at 46-47.  Mr. Lanzaro explained to Plaintiff that "the accounting system that

was being put in place was not set up properly, and they did not have a payroll service."  Ex. A at

47.

On a number of occasions, Plaintiff was not paid in a timely fashion and complained about

that fact with Ms. Ballou, Mr. Lucas, and Mr. Lanzaro.  Ex. A at 47-48.  In response to his

complaints, Plaintiff was provided with different explanations for the failure to pay him in a timely

fashion, including that "investment money is being generated, they don't have the money, monies

would be paid. . . ." Ex. A at 49.  See also Ex. A at 50 & 51.   These explanations were given to Plaintiff by Ms. Ballou, Mr. Lucas, and Mr. Lanzaro.  Ex. A at 50-51.  Jay Lucas provided assurances to Plaintiff that his compensation was guaranteed and that he would be paid.  Ex. A at 52.

Beginning at the end of May, 2016, Plaintiff stopped receiving compensation.  Ex. A at 52.  He called Jay Lucas, Karen Ballou, and Michael Lanzaro to inquire when he could expect to receive his overdue compensation.  Ex. A at 52.  In response to his inquiry, Mr. Lucas stated to Plaintiff "we will guarantee that payment will be made, that you will be made whole and paid up to date." Ex. A at 53.  Based on these assurances, Plaintiff continued to work for Defendants.  Ex. A at 53.  Plaintiff continued to work for the months of June, July, and August of 2016 without pay, Ex. A at 54, and no one told him that his employment had been terminated.  Ex. A at 54.

Plaintiff filed the instant lawsuit by complaint dated August 9, 2016.  Ex. A at 56.  In the complaint, he sought to recover unpaid compensation from Defendants.  Ex. 5 to Ex. A; Ex. A at 56.  In his Complaint, Plaintiff asserted claims against Defendants Lucas Brand Equity, LLC, HYD USA, LLC, and Jay Lucas, including claims that Defendants had violated the FLSA.  Ex. 5 to Ex. A, at 4, 5, Ex. A at 103.    Attorney Larry Peikes was retained by Defendants to represent them in the litigation and he entered an appearance on September 7, 2016.  Ex. A at 57; see also Ex. 15 to Ex. A.

By email dated September 12, 2016, Mr. Peikes stated that "it would behoove Mr. Edelstein to discontinue the activities that he claims to have been engaging in on HYD's behalf." Ex. 6 to Ex. A.  Upon receiving notice of Mr. Peikes' communication, Plaintiff stopped working

5

for HYD.  Ex. A at 65, 104.

Mr. Peikes' email also stated that Defendants stopped paying Plaintiff in May 2016 "due to the fact that he was not providing the services he was retained to provide." Ex. 6 to Ex. A. Contrary to this assertion, Plaintiff in fact worked full time for Defendants up until September 12, 2016.  Ex. A at 65.  During that disputed time-frame, Plaintiff had ongoing communications with Ms. Ballou and Mr. Lucas concerning his work as Chief Operating Officer.  Ex. A at 65.  Plaintiff sent a number of emails to Ms. Ballou, Mr. Lucas, and individuals outside of the business which demonstrate that he continued to perform services as Chief Operating Officer.  Ex. A at 67-102; see also Exhibits 7, 8, 9, 10, 11, 12, 13, and 14.

Following his termination of employment, Mr. Edelstein applied for and was approved for unemployment compensation based on the Connecticut Department of Labor's determination that he was an employee.  Ex. A at 106.  As of the date of the PJR Hearing on February 23, 2017—a period of approximately 5 months since his termination—Plaintiff remained unemployed and was continuing to receive unemployment compensation benefits.  Ex. A at 105-06.

Defendants failed to pay Plaintiff his compensation for services he performed from May 9 through September 12, 2016.  Ex. A at 114.  Based on his salary of $120,000, the unpaid compensation to which Plaintiff is owed amounts to $45,000.  Ex. A at 115.

## IV.    ARGUMENT

### A.    Plaintiff Has Established Probable Cause With Respect To Counts One, Two, and Six

The operative complaint in this action is the First Amended Complaint dated September 27, 2016 (1st Am. Compl.) [doc. 14].  The Fist Amended Complaint alleges that Plaintiff was

jointly employed by Lucas Brand Equity ("LBE") and HYD USA, LLC ("HYD"), and that LBE

and HYD failed to pay him his compensation for portions of his employment, in violation of the

Connecticut Minimum Wage Act, 31-58 et seq. (hereinafter "the CMWA"), the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq*. (hereinafter "the FLSA"), and in breach of the parties'

contract of employment.   See 1st Am. Compl., Counts 1-4.   The First Amended Complaint

further alleges that Defendants wrongfully terminated Plaintiff's employment in violation of the

anti-retaliation provisions of the FLSA. .   See 1st Am. Compl., Count 5.

     For the purposes of the instant Application for Prejudgment Remedy, and without

prejudice to his other claims. Plaintiff will rely solely on Count One (violation of the CMWA for

failure to pay wages), Count Two (breach of contract), and (3) Count Six (retaliatory discharge in

violation of the FLSA).

     1.    <u>Plaintiff Has Established Probable Cause With Respect To His Breach of
Contract Claim.</u>

     As noted by the Connecticut Supreme Court, all employer-employee relationships not

governed by express contracts involve some type of implied 'contract' of employment:

> At the outset, we note that all employer-employee relationships not governed by express
> contracts involve some type of implied "contract" of employment. "There cannot be any
> serious dispute that there is a bargain of some kind; otherwise, the employee would not be
> working." 1 H. Perritt, Employee Dismissal Law and Practice (3d Ed.1992) § 4.32, p.
> 326. To determine the contents of any particular implied contract of employment, the
> factual circumstances of the parties' relationship must be examined in light of legal rules
> governing unilateral contracts."

*Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 13, 662 A.2d 89 (1995).

     In order to make out a claim for breach of contract, the party claiming the breach must

show the formation of an agreement, breach of the agreement by the other party, and damages.

*Sullivan v. Thorndike,* 104 Conn.App. 297, 303, 934 A.2d 827 (2007); *Chiulli v. Zola,* 97

7

Conn.App. 699, 606–07 (2006); *Bouchard v. Sunberg,* 90 Conn.App. 180, 198 (2003). In order to constitute an offer and acceptance, sufficient to create an enforceable contract, the agreement must be based on the actions of the parties. *Shulman v. Hartford Public Library,* 119 Conn. 428, 433, 177 A. 269 (1935).

In the present case, sufficient evidence was presented that establishes that Plaintiff was hired by Defendants HYD USA and Lucas Brand Equity to perform services as Chief Operating Officer for HYD USA, and that in return for those services Plaintiff would be compensated at the rate of $120,000 per year. Exhibits 1 and 2 to Exhibit A, the verification of employment communications authored by Mr. Lucas and Mr. Lanzaro, in fact confirm Defendants' own understanding that Plaintiff was employed as Chief Operating Officer at the rate of $120,000 per year. See Ex. 1 and Ex. 2 to Ex. A. Plaintiff presented unrebutted testimony that those terms were accepted by the parties. Even were this Court to accept Defendants' far-fetched and unsupported argument that Plaintiff was an "independent contractor," this would in no way undermine Plaintiff's claim for breach of contract due to the fact that there was nevertheless an agreement between the parties wherein Plaintiff would be compensated for services rendered.

There is probable cause to believe that Defendants breached that contract by unilaterally discontinuing his compensation in May of 2016, despite the fact that Plaintiff continued to perform those services up until September 12, 2016. The evidence further establishes that, as a result of Defendants' breach of the agreement, Plaintiff suffered economic losses in the amount of 45,000. Accordingly, Plaintiff maintains that he is entitled to a prejudgment remedy against Defendants HYD USA and Lucas Brand Equity in the amount of $45,000.

2. Plaintiff Has Established Probable Cause With Respect To His CMWA Claim.

8

The Plaintiff has established probable cause with respect to the Defendants' failure to pay wages under Conn. Gen. Stat. § 31-72.  The text of Conn. Gen. Stat. § 31-72 reads, in relevant part:

> When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i . . . such employee or labor organization shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. Any agreement between an employee and his or her employer for payment of wages other than as specified in said sections shall be no defense to such action.

See Conn. Gen. Stat. § 31-72.

The CMWA defines employer broadly as, "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof." Conn. Gen. Stat. § 31-71a(1).  Connecticut courts have broadly construed the definition of employer, and given a liberal construction in favor of those whom the legislature intended to benefit." *Velasquez v. U.S. 1 Farm Mkt., Inc*., No. 3:13-CV-00634-GWC, 2016 WL 2588160, at *11 (D. Conn. May 3, 2016) (internal citations removed).  Employee is similarly defined broadly as "any person suffered or permitted to work by an employer." Conn. Gen. Stat. § 31-71a(2). "

Plaintiff is covered by the CMWA because he meets the definition of an employee within the meaning of the CMWA in that he was "permitted to work" by Defendants.  PJR Exhibits 1 and 2 in fact specifically refer to Plaintiff's "employment status" and verification of

"employment," and Defendants put in no evidence that Plaintiff was not an employee.  Rather, when Plaintiff complained about being paid as a "1099 employee," Defendants' accountant Mr. Lanzaro explained to Plaintiff that "the accounting system that was being put in place was not set up properly, and they did not have a payroll service."  Ex. A at 47, Ex. 1 and Ex. 2 to Ex. A.

Jay Lucas is an appropriate Defendant for the purposes of Plaintiff's CMWA claim.  As explained by the Connecticut Supreme Court in *Butler v. Hart. Tech. Institute, Inc.*, 243 Conn. 454, 462 (1997), "the term employer as used in § 31-72 encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so.". *See also Morales v. Gourmet Heaven Inc.,* 3:14-cv-01333(VLB), 2016 WL 6996976, * 6 (D.Conn.2016) (adopting *Butler* test for assessing individual liability under CMWA).  As discussed above, Plaintiff's testimony established that Jay Lucas had ultimate responsibility for the performance of HYD USA, hired the Plaintiff in the role, set his compensation, explained to Plaintiff why he had stopped receiving his compensation, and assured Plaintiff that he would be "made whole."  Under these circumstances, there is probable cause to believe that Mr. Lucas had ultimate authority over the payment of Plaintiff's wages and was, at least in part, specifically responsible for Defendants' failure to pay Plaintiff's wages.

Defendants' liability in connection with Plaintiff's CMWA claim is $90,000, representing "twice the amount" Plaintiff's unpaid compensation of $45,000.  See Conn. Gen. Stat. § 31-72.  Accordingly, Plaintiff is entitled to a prejudgment remedy against HYD USA, Lucas Brand Equity, LLC, and Jay Lucas, jointly and severally, in the amount of $90,000.

3.    Plaintiff Has Established Probable Cause With Respect To His FLSA
       Retaliatory Discharge Claim.

10

The FLSA provides that it is "unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint." 29 U.S.C.A. § 215(a)(3).  FLSA retaliation claims are subject to a *McDonnell Douglas Cor. V. Green*, three-step burden shifting framework.  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  Under this framework "a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in a protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff;; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

"[A] causal connection between an adverse action and a plaintiff's protected activity may be established … by showing that the protected activity was closely followed in time by the adverse action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  *See also Thompson v. Jennings & Hartwell Fuel Oil Corp.,* No. 14 CV 1857 RJD LB, 2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015) (Close proximity to the protected activity of the complaint of overtime violations and termination establishes a causal link between the protected activity and retaliatory discharge).

In the present case, Plaintiff first learned that he was terminated by way of Mr. Peikes' September 12, 2016 email, which was sent out approximately one month after the initial lawsuit had been filed and five days after Mr. Peikes entered his appearance.  Based on this close proximity, there is probable cause to sustain the validity of Plaintiff's FLSA retaliation claim. *Giordano v. Giordano*, 39 Conn. App. 183, 206 (1995).

In terms of damages, Plaintiff testified at the PJR Hearing that he had been unable to find

11

employment since his termination of employment, which was approximately five months after his termination of employment.  At the rate of $120,000 per year, this represents approximately $50,000 in lost wages.

### B.      Plaintiff Is Entitled To Attorney's Fees Relating To His Application For A Prejudgment Remedy

Attorneys' fees may properly be awarded as part of a prejudgment remedy if a party can demonstrate that it is probable that attorneys' fees will be awarded at trial. *TES Franchising, LLC v. Feldman*, 286 Conn. 132, 147 (2008). Connecticut General Statutes § 31-72 provides that once liability is established, an employer "…shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees…"). Similarly, a prevailing Plaintiff under the anti-retaliation provisions of the FLSA is similarly entitled to an award of Attorneys' fees.  *See* 29 USC Section 216(b).

The undersigned represents that his hourly rate is $450.00, that Attorney Wiktor's hourly rate is $360.  As of the present date, the undersigned has 59 hours in the file (representing fees of $20,650) and Attorney Wiktor has 49 hours (representing $17,640) for a combined total of $38,290.  Through trial, it is conservatively estimated based that an additional $150,000 in fees and expenses would be incurred for a total of $188,290.  Plaintiff therefore asks that, in addition to the damages outline above, $180,000 should be accounted for in a prejudgment remedy fashioned by this Court.

## V.      SUMMARY OF REMEDY SOUGHT

Plaintiff acknowledges that the damages he seeks under his breach of contract claim in Count One is subsumed by his CMWA claim and thus the Court need not consider the contract damages in the event that it finds Plaintiff has established probable cause as the validity of his

CMWA claim.  Thus, the total remedy sought for the *sole* purpose of this motion is as follows:

    1.      CMWA claim-- $90,000

    2.      FLSA Retaliation Claim-- $50,000.

    3.      Attorneys' fees-- $180,000

This represents a combined total of $320,000 sought as a prejudgment remedy.

    Lastly, Plaintiff respectfully requests that his December 20, 2016 Motion for Disclosure be granted in order to effectuate the Order on Prejudgment Remedy in accordance with the terms set forth in said motion.

## VI.    CONCLUSION

    For the foregoing reasons, Plaintiff respectfully requests that his Motion for Prejudgment Remedy and Motion for Disclosure be granted.

               PLAINTIFF,
               STEVEN EDELSTEIN

        By:     */s/  William G. Madsen*
               William G. Madsen (CT09853)
               Madsen, Prestley & Parenteau, LLC
               402 Asylum Street
               Hartford, CT  06103
               Phone: (860) 246-2466   Fax: (860) 246-1794
               Attorneys for the Plaintiff
               wmadsen@mppjustice.com

## CERTIFICATION OF SERVICE

    I hereby certify that on this 6th day of April, 2017, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].   Parties may access this filing through the

Court's system.

_/s/_     _William G. Madsen_
William G. Madsen