UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Steven J. Edelstein | : |
|     Plaintiff, | :     16 Civ. 01353 (WWE) |
| v. | : |
| Lucas Brand Equity, LLC, Hyd USA, LLC, and Jay Lucas, | : |
|     Defendant. | : |

**DEFENDANTS LUCAS BRAND EQUITY LLC AND JAY LUCAS'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.       INTRODUCTION**

Plaintiff Steven Edelstein lacks standing to sue Lucas Brand Equity LLC and Jay Lucas because Plaintiff cannot prove any injuries that are traceable to these two defendants.

Article III of the Constitution limits federal judicial power to "cases" and "controversies," and thus imposes the "irreducible constitutional minimum" of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (citations and quotations marks omitted). To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, Inc., 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).

Plaintiff bears the burden of establishing Article III standing. *Lujan*, 504 U.S. at 561. For the reasons below, Plaintiff cannot satisfy his burden. Thus, pursuant to Rule 12(b)(1) of the Federal Rule of Civil Procedure, the claims against these defendants should be dismissed for lack of subject matter jurisdiction.

**II.      BACKGROUND ON THE ORGANIZATION OF PRIVATE EQUITY FUNDS**

"The separation of funds and managers is nearly universal among the types of enterprise that we commonly think of as investment funds." John Morley, *The Separation of Funds and Managers: A Theory of Investment Fund Structure and Regulation*, 123 YALE L.J. 1228, 1234 (2014) ("Morley, *The Separation of Funds and Managers*"). Nonetheless, Plaintiff and his counsel completely overlooked this distinction. A brief background on how private equity funds are structured is helpful in clarifying these matters.

1

"The vast majority of domestic private equity funds use the limited partnership form of organization for the Fund."  JAMES M. SCHELL AND KRISTINE M. KOREN, PRIVATE EQUITY FUNDS: BUSINESS STRUCTURE AND OPERATIONS § 3.01 at 3-1 (2016) ("SCHELL, PRIVATE EQUITY FUNDS").  "In the United States, limited partnerships, like corporations are legal entities authorized by statute."  *Id.* § 3.01[1] at 3-2.

Institutional and high-net worth individual invest their money into the fund pursuant to the terms in a Limited Partnership Agreement.  The liability of these investors is limited to their investment and they do not make any investment decisions for the fund – thus, they are referred to as limited partners.  The general partner of the fund makes the investment decisions and decides which investments to include in its portfolio.  General partners can, and often do, manage more than one private equity fund at a time.  The general partners are usually the "sponsor" or originator of that particular fund.  General partners have fiduciary duties to the fund and unlimited liability.

The fund and the general partner (*i.e.*, the investment manager) are separate legal entities.  "By virtue of the fact that funds and management companies are separate entities, any creditors who contract with a management company have no claims against the assets of the funds."  Morley, *The Separation of Funds and Managers*, 123 YALE L.J. at 1240.  And, of course, vice-a-versa.

It has long been true that the general partner may be a corporation so as to address concerns regarding the scope of the general partner's unlimited liability.  *See* SCHELL, PRIVATE EQUITY FUNDS § 3.01[2] at 3-5.  Absent such protection, many individual people would not participate in the management of a fund since it would expose them to unlimited liability.

2

In recent years, limited liability companies or LLCs have emerged as a popular legal entity to replace corporations for limited liability. "Many states, including Delaware, now authorize limited liability companies in which neither the owners (called members) nor the managers have personal liability for the debts and obligations of the limited liability company." *Id.* Because LLCs can elect to be treated as partnerships for tax purposes and also have the flexibility of a partnership, "the limited liability company is becoming the favored form of organization for the General Partner and the two-tier structure the most common place for domestic private equity funds." *Id.* at 3-6.

The private equity fund in this case is Lucas Brand Equity LP (an entity that was not sued). The private equity fund's general partner – that is, the fund's investment manager – is Lucas Brand Equity LLC. Jay Lucas is one of the LLC's managing members. These are separate legal entities.

Put another way, the private equity fund that Plaintiff has attempted to put at the center of this litigation is structured in the same way as thousands of other private equity funds across the county. This fact is publicly available on the Internet. *See* Lucas Brand Equity LP's Form D (filed with the SEC on April 26, 2016) *available at* https://www.sec.gov/Archives/edgar/data/1588036/000158803616000001/xslFormDX01/primary_doc.xml.[1]

---

[1] The Securities and Exchange Commission promulgated Regulation D to enable issuers such as Lucas Brand Equity LP to sell securities without registering them with the SEC as otherwise required under the Act. *See* 17 C.F.R. § 230.503. Issuers that sell securities in reliance on Regulation D are required to file Form D with the SEC. The private equity fund's Form D is the first document available when one googles: "Lucas Brand Equity LP".

3

### III. PLAINTIFF ONLY WORKED AS CHIEF OPERATING OFFICER OF HYD

The evidence at the recent hearing forecloses any argument that an injury suffered by Plaintiff could be fairly traceable to the fund's investment manager or it managing member.[2] Plaintiff repeatedly testified that he was only the chief operating officer of Hyd for Men, a small company that sold men's products that a private equity fund invested in.

> Q  Okay. And did Mr. Lanzaro have -- and you were chief operating officer of HYD USA during this time period?
>
> A  Correct.

Tr. at 13 (questioned by Plaintiff's counsel).  Plaintiff also testified that he had no other jobs:

> Q  Did you have any other job or employment during the time that you served as chief operating officer for HYD USA?
>
> A  No.

Tr. at 28 (questioned by Plaintiff's counsel).

Plaintiff's counsel continually tried to either overlook or obscure the fact that Plaintiff only worked for Hyd as a chief operating officer

> MR. LEHMAN: Can he clarify which entity?
>
> MR. MADSEN: We'll get to that. . . .

Tr. at 6. Plaintiff's counsel went so far as to insert leading questions that amount to nothing more than counsel's inadmissible testimony.  *See* Tr. at 33-34 (Q  "Well, did HYD -- did Lucas Brand -- during the time that you were chief operating officer for Lucas Brand Equity and HYD USA –" A "Right.").

But, on cross-examination and when required to answer the question by the Court, Plaintiff finally admitted he was only the chief operating officer of Hyd.

---

[2] The transcript is attached as an exhibit to this memorandum and also available at CM/ECF 47-1 as an exhibit.  The pages of the transcript are referred to as Tr. at ___.

>A  My understanding was I was the chief operating officer of HYD as a portfolio company, as a brand.
>
>Q  Were [you] ever a chief operating --
>
>A  No. I was not a chief operating officer for Lucas Brand Equity, LLC . . .

Tr. at 145.

>MR. LEHMAN:  So were you chief operating officer of Lucas Brand Equity, LLC?
>
>MR. MADSEN: Objection.
>
>MR. LEHMAN: Can you tell us what your objection is?
>
>MR. MADSEN: It's been asked and answered.
>
>THE COURT: Overruled. I'll let him answer one more time.
>
>THE WITNESS:  I'm sorry?
>
>Q  Were you chief operating officer of Lucas Brand Equity, LLC?
>
>A  I was not.

Tr. at 147-48.

Indeed, Plaintiff finally admitted that he was never paid by the LLC – although only after looking at his own exhibits (particularly Exhibit 17, which contains the wire transfers by which he was paid) and having repeatedly asserted that he was:

>Q  So sitting there right now, you don't know of a single instance where the LLC paid you?
>
>A  No, I don't.

Tr. at 181.

5

## IV.  CONCLUSION

The facts underlying this litigation can be summarized as follows:  A private equity fund invested in a small company that focuses on men's personal grooming.  Plaintiff was the company's chief operating officer.  Plaintiff has now sued the company, the private equity fund's investment manager and one of its managing members.

The claims against the investment manager and its managing member must be dismissed.  There is no legal injury that can be fairly traced to them and, as a result, Plaintiff lacks standing to sue them.


Date:  April 14, 2017

/s/ *Brian Lehman*
Brian Lehman
Lehman LG LLC
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April 2017, a true copy of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and its supporting memorandum of law was served on all counsel of record by the CM/ECF system of the District of Connecticut, which then sends a notification of such filing to all counsel of record.

Date:  April 14, 2017

/s/ *Brian Lehman*
Brian Lehman
Lehman LG LLC
Counsel for Defendants
