UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN J. EDELSTEIN | : | |
| | : | CASE NO. 3:16-CV-01353 (WWE) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| LUCAS BRAND EQUITY, LLC, | : | |
| HYD USA, LLC, JAY LUCAS, | : | |
| KAREN BALLOU AND LUCAS | : | |
| BRAND EQUITY, LP | : | |
| | : | |
| Defendants. | : | NOVEMBER 13, 2017 |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

As their Answer to the Third Amended Complaint filed by and on behalf of plaintiff

Steven J. Edelstein ("Plaintiff") in the above captioned case, defendants Lucas Brand Equity,

LLC ("LBE"), HYD USA, LLC a/k/a HYD for Men ("HYD USA"), Jay Lucas ("Lucas"), Karen

Ballou ("Ballou"), and Lucas Brand Equity, LP ("Lucas LP") (all collectively referred to as

"Defendants") admit, deny, and allege as follows:

1.      Paragraph 1 of Plaintiff's Third Amended Complaint consists of a

characterization of claims, to which no response is required.  However, Defendants deny

violating federal and/or state wage and hour laws and further deny that Plaintiff is entitled to any

form of relief.

2.      Paragraph 2 of Plaintiff's Third Amended Complaint consists of a

characterization of claims, to which no response is required.

3.      Defendants deny the allegations in Paragraph 3 of Plaintiff's Third Amended Complaint, except that Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that Plaintiff resides in New Haven, Connecticut.

4.      The allegation in Paragraph 4 of Plaintiff's Third Amended Complaint that LBE is "an employer engaged in interstate commerce as that term is defined under FLSA" is in the nature of a legal conclusion, to which no response is required.  Defendants otherwise admit the allegations in Paragraph 4.

5.      Defendants deny the allegation in Paragraph 5 of Plaintiff's Third Amended Complaint that HYD USA's principal place of business is New York, NY.  The allegation that HYD is "an employer engaged in interstate commerce as that term is defined under FLSA" is in the nature of a legal conclusion, to which no response is required.  Defendants admit that HYD USA is a foreign corporation that does business in Connecticut.

6.      Defendants admit that Lucas LP is a private equity fund, whose principal place of business is New York.  Defendants deny that Lucas LP transacts business in Connecticut.  The allegation that Lucas LP is "an employer engaged in interstate commerce as that term is defined under FLSA" is in the nature of a legal conclusion, to which no response is required.

7.      Defendants deny the allegations in Paragraph 7 of Plaintiff's Third Amended Complaint.

8.      Defendants admit the allegations in Paragraph 8 of Plaintiff's Third Amended Complaint.

9.      Defendants admit the allegations of Paragraph 9 of Plaintiff's Third Amended Complaint.

10.     Defendants deny the allegations in Paragraph 10 of Plaintiff's Third Amended Complaint.

11.     Defendants deny the allegations in Paragraph 11 of Plaintiff's Third Amended Complaint.

12.     Defendants admit the allegations in Paragraph 12 of Plaintiff's Third Amended Complaint.

13.     Defendants deny the allegations in Paragraph 13 of Plaintiff's Third Amended Complaint.

14.     Defendants deny the allegations in Paragraph 14 of Plaintiff's Third Amended Complaint.

15.     Defendants deny the allegations in Paragraph 15 of Plaintiff's Third Amended Complaint.

16.     Defendants deny the allegations in Paragraph 16 of Plaintiff's Third Amended Complaint.

17.     Defendants deny the allegations in Paragraph 17 of Plaintiff's Third Amended Complaint.

18.     Defendants deny the allegations in Paragraph 18 of Plaintiff's Third Amended Complaint.

19.     Defendants deny the allegations in Paragraph 19 of Plaintiff's Third Amended Complaint.

20.     Defendants deny the allegations in Paragraph 20 of Plaintiff's Third Amended Complaint.

**COUNT ONE**

21.     Defendants deny the allegations in Paragraph 21 of Plaintiff's Third Amended Complaint.

22.     Defendants deny the allegations in Paragraph 22 of Plaintiff's Third Amended Complaint.

23.     Defendants deny the allegations in Paragraph 23 of Plaintiff's Third Amended Complaint.

**COUNT TWO**

24.     Defendants deny the allegations in Paragraph 24 of Plaintiff's Third Amended Complaint.

25.     Defendants deny the allegations in Paragraph 25 of Plaintiff's Third Amended Complaint.

**COUNT THREE**

26.     Defendants deny the allegations in Paragraph 26 of Plaintiff's Third Amended Complaint.

27.     Defendants deny the allegations in Paragraph 27 of Plaintiff's Third Amended Complaint.

28.     Defendants deny the allegations in Paragraph 28 of Plaintiff's Third Amended Complaint.

**COUNT FOUR**

29.     Defendants deny the allegations in Paragraph 29 of Plaintiff's Third Amended Complaint.

30.     Defendants deny the allegations in Paragraph 30 of Plaintiff's Third Amended Complaint.

31.     Defendants deny the allegations in Paragraph 31 of Plaintiff's Third Amended Complaint.

## COUNT FIVE

32.     Paragraph 32 of Plaintiff's Third Amended Complaint consists of a legal conclusion, to which no response is required.

33.     Paragraph 33 of Plaintiff's Third Amended Complaint consists of a characterization of claims, to which no response is required.  However, Defendants deny breach a contract and/or violating state or federal wage and hour law.

34.     Paragraph 34 of Plaintiff's Third Amended Complaint describes a form of relief that Plaintiff seeks, to which no response is required.  However, Defendants deny that Plaintiff is entitled to the relief requested.

35.     Paragraph 35 of Plaintiff's Third Amended Complaint describes a form of relief that Plaintiff seeks, to which no response is required.  However, Defendants deny that Plaintiff is entitled to the relief requested.

## COUNT SIX

36.     Defendants deny the allegations in Paragraph 36 of Plaintiff's Third Amended Complaint.

37.     Defendants deny the allegations in Paragraph 37 of Plaintiff's Third Amended Complaint.

38.     Defendants deny the allegations in Paragraph 38 of Plaintiff's Third Amended Complaint.

39.     Defendants deny the allegations in Paragraph 39 of Plaintiff's Third Amended Complaint.

40.     Defendants deny the allegations in Paragraph 40 of Plaintiff's Third Amended Complaint.

41.     Defendants deny the allegations in Paragraph 41 of Plaintiff's Third Amended Complaint.

42.     Defendants deny the allegations in Paragraph 42 of Plaintiff's Third Amended Complaint.

## AFFIRMATIVE DEFENSES

43.     Defendants allege the following defenses to the claims and allegations set forth in Plaintiff's Third Amended Complaint.

### FIRST DEFENSE

44.     Plaintiff's Third Amended Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

45.     If Plaintiff was an employee of Defendants, or any of them, and Defendants expressly deny such was the case, he was exempt from the minimum wage and overtime pay requirements under the Fair Labor Standards Act and the Connecticut Minimum Wage Act.

### THIRD DEFENSE

46.     If Defendants, or any of them, violated the Fair Labor Standards Act and/or the Connecticut Minimum Wage Act, and Defendants expressly deny such was the case, the underlying act or omission giving rise to a violation was in good faith and based on reasonable grounds for believing the act or omission did not violate federal or state wage and hour laws.

## FOURTH DEFENSE

47.     Plaintiff's claims are barred in whole or in part under the doctrine of unclean hands.

## FIFTH DEFENSE

48.     Plaintiff materially breached the terms of any employment contract he may have entered into with Defendants or any of them.

## SIXTH DEFENSE

49.     Any contractual duties Defendants, or any of them, owed to Plaintiff were discharged as a consequence of Plaintiff's failure to perform.

## SEVENTH DEFENSE

50.     Plaintiff has failed to mitigate his alleged damages, any entitlement to which is expressly denied.

## EIGHTH DEFENSE

51.     Plaintiff's claims are barred, in whole or in part, by the doctrine of setoff.

## <u>COUNTERCLAIMS</u>

Lucas LP, as and for its counterclaims against Steven J. Edelstein, alleges as follows:

**JURISDICTION AND VENUE**

52.     This court has jurisdiction over Lucas LP counterclaims, pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. This court also has jurisdiction pursuant to Fed. R. Civ. P. 13 and 28 U.S.C. § 1367.

53.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as this is a district in which Edelstein resides and/or a substantial part of the events giving rise to the counterclaims occurred.

## FACTS

54.     In or about September, 2015, Edelstein was hired as the Chief Operating Officer of HYD USA.  Edelstein also called himself the Chief Executive Officer of HYD USA.

55.     At that time, HYD USA for was still in the incubation stage.  In other words, as a portfolio company of Lucas LP, it received accounting and other assistance.  The purpose of an incubator is to provide limited support to a startup so that it can focus on and build its core business.  HYD USA marketed a product collection whose goal was "to create shaving and cosmetic solutions that are innovative, beneficial to men's health and good for the environment."

56.     Many of the more pedestrian duties associated with selling a line of men's "cosmetic solutions," like manufacturing or product fulfillment, for example, were outsourced to third parties.  This allowed Edelstein to focus on building the HYD USA brand by, among other things, convincing retailers to sell and promote HYD USA products.

57.     Edelstein's performance, or really complete absence of performance, was fairly astounding.  When he assumed complete responsibility for HYD USA, it had retailers who sold its product and revenues.

58.     Those revenues immediately disappeared.  In other words, under Edelstein's direction, the revenues were either diverted to his own personal use or he quickly destroyed HYD USA's revenue base and did not develop any new business.

59.     Edelstein worked out of his New Haven home.  Lucas LP had little idea what he was doing during the long hours he supposed to be devoting to building the HYD USA brand and increasing its sales.

60.     Lucas LP owned a minority interest in HYD USA and it represented a tiny part, in overall dollars, of its portfolio of investments.  The purpose of hiring Edelstein, rather than developing the HYD USA brand using the defendants' expertise was to have one person devote all of his or her time to nurturing the brand and increasing market penetration and sales.

61.     Edelstein claims that he was "responsible for **all facets**" of this "traditional and digital revenue generating brand."  (Emphasis added).  As stated above, that revenue was not deposited in the HYD USA bank account.

62.     While defendants do not really know what Edelstein did on a daily basis, he claims that he essentially saved and built the HYD USA brand.  For example, Edelstein states that through his "experience," "expertise" and "talent," Hyde USA "secure[d] capital funding  . . . to continue the growth of this business deeply entrenched in the ever-evolving Men's Skincare category."  The reality is that he destroyed this company and appropriated, consumed or evaporated all of its revenue.

63.     Edelstein claims that he "[m]anaged all elements" of Hyde USA including "financial execution and monitoring."  This included "AR/AP, etc."  Edelstein claims he "[d]eveloped and maintained vital 'sustained revenue' relationships with subscription brands. . . ."  He states that he "[d]eveloped, detailed, and executed Brand Books, Marketing and Trade Plans."

64.     Edelstein states that he "[m]aintained all retail relationships with consistent communication and product updates."  "These included" Bed, Bath and Beyond, Harmon's,

Giant Eagle and Kinney Drug." He also states that he "increased product sell-through by opening additional retail 'doors,'" and "increased 3rd party URL brand participation (Walgreens.com, Mankind, The HUT Group)."

65.    Edelstein claims that he "grew" Hyde USA's revenue "over 25%" during his first year as Chief Operating Officer. Where that revenue went remains a mystery.

66.    He claims that he "re-negotiated and reduced expense with all back-end partners. These included: Manufacturing, Product Packaging (primary/Secondary), Customer care, and Logistics/Fulfillment/Distribution."

67.    In essence, according to Mr. Edelstein, and consistent with his titles as CEO and COO, he was independently responsible for all facets of Hyde USA's operations and positive growth and yet revenues never appeared and HYD USA failed, spectacularly, under his control. At the same time, Mr. Edelstein claims in his lawsuit that he was controlled by the various defendants in this case such that he was an employee of these various defendants for wage and hour purposes.

## COUNTERCLAIM ONE
### (Breach of Fiduciary Duty By Lucas LP)

68.    Lucas LP repeats and realleges the allegations in paragraphs 52 to 67 as though fully set forth herein.

69.    Lucas LP is a minority shareholder in HYD USA, LLC and brings this derivative claim on behalf of HYD USA for breach of fiduciary duty against Edelstein pursuant to Conn. Gen. Stat. § 52-572j. HYD USA lacks the financial wherewithal to assert these claims against Edelstein and therefore it would be futile to demand that HYD USA file these claims.

70.     Lucas LP is a fair and adequate representative of the members of HYD USA, LLC as all members were injured through the lack of any profits arising from Edelstein's breach of fiduciary duty.

71.     Edelstein as COO/CEO of HYD USA owed the members of HYD USA a fiduciary duty.

72.     As stated above, despite the fact that HYD USA had revenue, none of it was ever deposited in HYD USA's bank account.  Upon information and belief, Edelstein ran HYDE USA for his own benefit and personal enrichment and not for the benefit of the members.  Upon further information and belief, Edelstein diverted HYD USA's assets to himself.

73.     As the CEO/COO of HYD USA, and as stated by Edelstein above, Edelstein retained primary and even exclusive control over all aspects of HYD USA and therefore had the opportunity to divert HYD USA assets without the knowledge of its members.

74.     In doing so, Edelstein breached his fiduciary duty to the members of HYD USA.

## COUNTERCLAIM TWO
### (Conversion By Lucas LP)

75.     Lucas LP repeats and realleges the allegations in paragraphs 52 to 74 as though fully set forth herein.

76.     Upon information and belief, through his primary and, in some cases, exclusive control over the operations of HYD USA, Edelstein converted the HYD USA's revenues to himself.  Instead of depositing these revenues in the HYD USA bank account, upon information and belief Edelstein converted them and kept them for his own use.

77.     These funds rightfully belonged to HYD USA.  Lucas LP brings this claim, derivatively on behalf of HYD USA pursuant to Conn. Gen. Stat. § 52-572j.

78.     As a result, HYD USA has been damaged.

11

## COUNTERCLAIM THREE
### (Civil Theft by Lucas LP)

79.     Lucas LP repeats and realleges the allegations in paragraphs 52 to 78 as though fully set forth herein.

80.     Upon information and belief, through his primary and, in some cases, exclusive control over the operations of HYD USA, Edelstein converted the HYD USA's revenues to himself.  Instead of depositing these revenues in the HYD USA bank account, upon information and belief Edelstein converted them and kept them for his own use.

81.     These funds rightfully belonged to HYD USA.  Upon information and belief, Edelstein intentionally appropriated/diverted HYD USA funds for himself.  This misconduct constitutes civil theft pursuant to Conn. Gen. Stat. § 52-564.

82.     Lucas LP brings this claim, derivatively on behalf of HYD USA pursuant to Conn. Gen. Stat. § 52-572j.

83.     As a result, HYD USA has been damaged.

**WHEREFORE**, the Lucas LP respectfully requests that the Court enter judgment in its

favor and against plaintiff on its Counterclaims and award the following to Lucas LP:

a.   An accounting;
b.   Money damages;
c.   Punitive (treble) damages;
d.   Prejudgment Interest;
e.   Post-judgment Interest;
f.   Attorneys' fees and costs; and
g.   Such other and further relief as the Court may deem just and proper.

DEFENDANTS,
LUCAS BRAND EQUITY, LLC, HYD USA, LLC,
JAY LUCAS, KAREN BALLOU and LUCAS
BRAND EQUITY, LP.

/s/ Simon I. Allentuch_____
Simon I. Allentuch (ct21094)
Anthony C. Famiglietti (ct30221)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510
Tel: (203) 821-2000
Fax: (203)821-2009
sallentuch@npmlaw.com

13

## <u>CERTIFICATION</u>

I hereby certify that on November 13, 2017 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Simon I. Allentuch_____
Simon I. Allentuch