# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **STEVEN J. EDELSTEIN**<br>   **Plaintiff**<br><br>v.<br><br>**LUCAS BRAND EQUITY, LLC;**<br>**HYD USA, LLC; JAY LUCAS; KAREN BALLOU;**<br>**and LUCAS BRAND EQUITY LP**<br>   **Defendants** | CIVIL ACTION NO.:<br><br>3:16-cv-01353 (WWE) |

**SUPPLEMENTARY RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the Defendants Lucas Brand Equity LLC, Jay Lucas, and HYD USA, LLC (hereinafter "Defendants") submit these supplemental responses to the Plaintiff's First Set of Interrogatories as follows.

**INTERROGATORIES**

1.   Please identify all persons who answered these Interrogatories and Production Requests or who provided information or responses used in responding to each of these interrogatories. If more than one person provided information for a single interrogatory, please identify with precision the information provided by each person. In identifying said persons, please provide the following information pursuant to Local Rule 26(c)(3), namely, "the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment."

1

**RESPONSE:** Jay S. Lucas, Lucas Brand Equity, LP, 475 Park Avenue South, 25th Floor, New York, NY 10016.

2. For each year in which Plaintiff was paid by any of the Defendants, identify all compensation, including wages, bonuses and all fringe benefits, including but not limited to, medical, dental, life, retirement, worker's compensation, social security and Medicare benefits, unemployment insurance, pension and/or profit sharing plans offered to Plaintiff, and state the dollar value cost to Defendant(s) of Plaintiff's wages (including bonuses) and fringe benefits.

**RESPONSE:** In 2015, plaintiff received payments totaling $40,000 on account of services provided to HYD USA, LLC. In 2016, plaintiff received payments totaling $45,000 on account of services provided to HYD USA, LLC. All payments were made by or on behalf of HYD USA, LLC.

(In conjunction with its investment into HYD USA, LLC, and because HYD USA LLC had not yet established its own bank accounts, Lucas Brand Equity LP made three $5,000 wire transfers to Mr. Edelstein on HYD's behalf in September/October of 2015 on account of services he provided to HYD USA LLC. Lucas Brand Equity LP also made one $5,000 wire transfer in June 2016 to Mr. Edelstein on HYD's behalf of because HYD USA LLC had been overdrawn in its bank account and could not at the time initiate a wire transfer from that account, and to accommodate Mr. Edelstein's request for immediate payment. All four of these payments are included in the total payments of $85,000 referenced above).

2

**Unrelated to HYD USA, LLC's business, Lucas Brand Equity LP also made payments in 2014 to Mr. Edelstein or an affiliated entity totaling $13,930.98 for consulting work provided to other Lucas Brand investment projects.**

3.  For each year in which Plaintiff was paid by any of the Defendant(s), identify the compensation arrangement that existed between Plaintiff and the Defendant(s) (including the rate of pay and the way in which the pay was calculated), and the dates of the existence of each such arrangement.

**RESPONSE:** **Plaintiff was compensated by HYD USA LLC semi-monthly at the rate of $120,000 per annum for discharging the functions of chief operating officer of that entity. The arrangement commenced in September 2015 and lasted until he ceased providing services to HYD USA LLC no later than August/September 2016.**

4.  Please state fully and specifically the complete factual basis for the Second Defense set forth in your Answer dated October 11, 2016.

**RESPONSE:** **If plaintiff were to be viewed as an 'employee' for purposes of the Fair Labor Standards Act or the Connecticut Minimum Wage Act, he would nonetheless be exempted from the application of those statutes because his activities fall within the definition of a "highly compensated employee."**

**His primary duties involved performance of office or non-manual work. His total annual compensation, on a salary or fee basis, was $120,000, thereby exceeding the**

3

threshold amount required to qualify as a highly compensated employee. He customarily and regularly performed one or more of the exempt duties or responsibilities of an executive, administrative or professional employee, including but not limited to management activities such as determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; planning budgets; maintaining production or sales records for use in supervision or control; interacting with outside sales representatives and assisting in direction of their activities; and determining potential customers to target and implementing pursuit of those customers.

By his own admission, the plaintiff, as chief operating officer of HYD USA, LLC: "managed all elements of business relaunch, financial execution and monitoring (integration of accounting system, and review of all financial updates (AR/AP, etc.));" "developed, detailed and executed Brand Books, Marketing and Trade Plans (retail support and consumer support and consumer marketing);" "increased product sell-through by opening additional retail doors, as well as increased 3rd party URL brand participation (Walgreens.com, Mankind, the HUT Group);" "maintained all retail relationships with consistent communication and product updates;" "influenced, renegotiated and reduced expense with all back-end partners. These included: Manufacturing, Product Packaging (Primary/Secondary), Customer Care and Logistics/Fulfillment/Distribution;" "maintained all digital marketing. This includes URL updates, social media platforms (posts, customer care response, and relevant

content and awareness), public relations and post-acquisition publicity;" "developed and maintained vital 'sustained revenue' relationships with subscription brands to effectively enhance brand awareness and URL traffic."

In addition, the plaintiff also held himself out as chief executive officer of HYD USA, LLC, and engaged in strategic and financial planning and implementation for the company (including establishing the direction of HYD's business activities and making financial projections). He also prepared financial models and projections for HYD which expressly assumed that only in Year 3 would officers begin taking salary and understood equity infusions were contingent upon performance. On his own schedule, he engaged in the solicitation, negotiation, contracting and implementation of critical supply relationships, sales representation relationships, sales and customer relationships.

5.      Please state fully and specifically the complete factual basis for the Third Defense set forth in your Answer dated October 11, 2016.

RESPONSE: Defendants believed in good faith that Mr. Edelstein was engaged as an independent contractor to HYD USA, LLC for which compensation could be paid on a '1099' basis and that his compensation level and management duties were otherwise sufficient to place him outside the minimum wage laws.

6.     Please state fully and specifically the complete factual basis for the Fourth Defense set forth in your Answer dated October 11, 2016.

**RESPONSE:  See responses 9 and 12 below.**

7.     Please state fully and specifically the complete factual basis for the Fifth Defense set forth in your Answer dated October 11, 2016.

**RESPONSE:  See responses 9 and 12 below.**

8.     Please state fully and specifically the complete factual basis for the Sixth Defense set forth in your Answer dated October 11, 2016.

**RESPONSE:  See responses 9 and 12 below.**

9.     Please state fully and specifically the complete factual basis for the Seventh Defense set forth in your Answer dated October 11, 2016.

**RESPONSE:   In 2011, Messrs. Adam Berk and Joseph Pisicchio formed a Florida limited liability company known as ABJP, LLC.  ABJP did business under the name and brand "HYD for Men," with Mr. Berk as its chief executive officer.  (ABJP, LLC was converted to the Delaware LLC known as HYD USA, LLC in September 2015).  ABJP had been formed for the principal purpose of developing, producing and distributing a product based upon a concept and certain processes conceived of by Mr. Pisicchio to "keep razor blades sharp longer, stop cuts, bumps and eliminate razor burns."  ABJP**

6

LLC also developed other shaving-related capabilities, including designing unique razor blade handles.

Mr. Edelstein was active in direct marketing and product branding, including particularly in the health, beauty and skincare field, through his involvement with companies such as The Logical Step, LLC, Specific Beauty, and Saddle Creek Logistics Services. He had become aware of ABJP and the HYD for Men brand, and had cultivated a relationship with Mr. Berk. He had also worked previously with Karen Ballou, a principal of Lucas Brand Equity LP, on past projects in the health, beauty and skincare field.

Lucas Brand Equity LP is a private equity fund focusing in the skincare, beauty and personal care space. As is typical of such funds, Lucas Brand Equity LP raises capital from limited partner investors through private placement offerings and provides financing, usually incrementally based on performance, to small, early stage, emerging firms believed to have significant growth potential (*e.g.*, based upon innovative technology, processes and/or business models) but which lack sufficient capital to develop such potential. As is also typical, in exchange for providing venture financing, Lucas Brand Equity LP obtains an equity position in the companies it invests in.

Mr. Edelstein brought ABJP, LLC and the HYD for Men brand to Lucas Brand Equity's attention as something it might consider making an investment in, and Mr. Edelstein introduced Lucas Brand Equity to Adam Berk. In seeking to facilitating a deal between Mr. Berk's company and Lucas Brand Equity LP whereby Lucas Brand

Equity would infuse capital in exchange for a minority equity position in ABJP (and, not coincidentally, create a management role and potentially an equity stake for himself), Mr. Edelstein provided due diligence information and engaged in financial and strategic planning purportedly as Acting CEO and Chief Operating Officer of HYD for Men.

Lucas Brand Equity LP developed an interest in the early stage 'HYD for Men' brand because, unlike many ultimately failed start-ups in the men's skincare space, 'HYD for Men' was focused principally on the one area where men's skincare products had demonstrated commercial success – shaving – and had developed innovative processes and products aimed directly at that niche. From Lucas Brand's investment perspective, ABJP's existing shaving product capabilities were attractive, but only if ABJP had a strategic supply relationship with one of the few dominant producers in the global market for razor blade manufacturing.

Mr. Edelstein represented that HYD had a strategic supply relationship with the European razor blade manufacturing company known as Feintechnik GmbH, one of the very few global producers in razor blade manufacturing, a unique capability owned by the well-known Harry's shave brand. Mr. Edelstein represented to Lucas Brand Equity that his contact, Mr. Bastiaan Mesu, was employed by Feintechnik and represented that Mesu had the authority and the intent to execute a legally binding supply agreement between Feintechnik and HYD USA that would be critical to HYD USA's strategy and success. Edelstein also represented that Mesu would deploy additional services and capabilities of Feintechnik to assist HYD in developing and expanding its razor program

8

through innovative designs, handle configurations and the like. Mr. Edelstein further represented, among other things, that Mesu and Feintechnik were completely committed to HYD's business relationship and to HYD's razor program roll-out, and provided an effective basis for HYD's manufacturing, new product launches, business expansion, and product volume.

In fact, Mr. Mesu was not positioned to assist HYD in developing and expanding its razor program with Feintechnik, nor was he authorized to make commitments to HYD on behalf of Feintechnik. Thus, the strategic supply relationship with Feintechnik -an absolute foundation of Lucas Brand Equity's investment thesis for the HYD brand – simply did not exist. It was a complete fabrication.

Lucas Brand Equity LP relied on Mr. Edelstein's representations to green light its investment into HYD. That investment reached some $200,000 in exchange for an approximately 10% share of ownership (Mr. Berk retained a nearly 90% stake in HYD, as well as the position of CEO) before Lucas Brand Equity LP suspended further investment for lack of performance. Lucas Brand Equity LP would not have invested in HYD had Mr. Edelstein not made representations as to the existence of a strategic supply relationship with Feintechnik. Further, Mr. Edelstein's false representations regarding Mesu and Feintechnik induced HYD to subsequently contract with Mr. Edelstein to discharge the functions of chief operating officer for HYD, as a result of which Mr. Edelstein personally benefitted financially – to the detriment of Lucas Brand Equity.

10. Please state fully and specifically the complete factual basis for Defendants contention that "plaintiff was never an employee of defendants" as described in Paragraph 34 of your Answer dated October 11, 2016.

**RESPONSE:   Prior to September 2015, Mr. Edelstein had been working with Adam Berk of ABJP, LLC d/b/a/ HYD for Men to, among other things, facilitate an investment by Lucas Brand Equity LP into ABJP, LLC.   (In fact, at the time Mr. Edelstein was corresponding with representatives of Lucas Brand Equity LP over the title "Acting CEO and Chief Operating Officer" of HYD for Men).  In connection with that investment, Mr. Berk, the actual CEO of ABJP, LLC had recommended that Mr. Edelstein play a role in management of the entity going forward, and Lucas Brand Equity LP, as an impending minority investor and source of venture funding, agreed to support that recommendation.  As a result, Jay Lucas reflected the investor's support by confirming to Mr. Edelstein on September 9, 2015 his engagement as Chief Operating Officer of HYD for Men, which was the d/b/a name for ABJC, LLC.   It was Mr. Lucas' intention that HYD treat Mr. Edelstein as an independent contractor.**

**None of Lucas Brand Equity, LP, Jay Lucas, Karen Ballou or Lucas Brand Equity, LLC ever entered into any contractual or employment relationship of any kind with Mr. Edelstein in connection with the HYD for Men business.**

10

11.     Please identify the individual or individuals who made the decision to terminate Plaintiff's relationship with Defendant(s).

**RESPONSE: On the recommendation of counsel, Mr. Lucas authorized counsel to inform Mr. Edelstein's attorney that Mr. Edelstein, to the extent that he was actually performing any work for HYD USA, LLC, should cease performing further work on behalf of HYD USA, LLC. It was not entirely clear at that time whether and to what extent Mr. Edelstein was actually providing services to HYD USA LLC.**

12.     Please state and describe with specificity each and every reason for the decision to terminate Plaintiff's relationship with Defendant(s).

**RESPONSE:   HYD USA, LLC's economic performance was extremely poor during Mr. Edelstein's association with the company, and did not show any sign of improvement by the time he was advised to discontinue any activities he was claiming to engage in on HYD's behalf.  The company was running at a significant net operating deficit. Sales were minimal.  Most important, collections were substantially less than sales, a situation that Mr. Edelstein could not satisfactorily explain.  Mr. Edelstein lacked a handle on HYD's accounts receivable or accounts payable, or its inventory, and had trouble reconciling or retrieving information regarding the same.  Payables were allowed to linger unattended to, ultimately prompting distributors to refuse to fill product orders.  Although Mr. Edelstein represented that sales were being made and had projected first year revenues of some $4,000,000, during the entire time of Mr. Edelstein's involvement HYD USA only collected**

11

$2,766. In other words, Mr. Edelstein was paid nearly 30x the entire receipts of the Company during his tenure.

Further, Mr. Edelstein undertook sales initiatives (*e.g.*, meeting with Starcrest, an off-brand cataloger) that displayed a lack of understanding of HYD's market and segment. Further, important vendors, suppliers and brand consultants (*e.g.* Giant Eagle, Cal Han, Michelle Probst) expressed difficulty in working with him. It also came to light that Mr. Edelstein representations about the crucial Feintechnik supply relationship were untrue.

Critically, Mr. Edelstein had caused a serious problem to arise with a mold-making company, InLabs, by issuing a form of supposedly non-binding purchase order with InLabs to produce plastic handles for razor blades.  Of course, it only would make sense for HYD USA to purchase such handles if the company also had a supply of blades., which of course in reality never did exist, despite the false and misleading representations of Edelstein. At the time that the order was placed, Edelstein still had yet to come clean and admit that he had fabricated the authority of Mesu and the intent of Feintechnik to commit an enter into a supply arrangement.  Thus, Edelstein fudged the 'purchase order' representing to Lucas Brand Equity that it was a 'non-binding purchase order' that Edelstein also referred to as 'a purchase order, but not a purchase order.'  InLabs, however, claimed the purchase order had been approved by Edelstein and was put into production, and then sought to charge HYD some $175,000.  This liability was entirely a result of Edelstein's continuing cascade of false representations.

**In addition, Mr. Edelstein also fumbled a critical presentation to an important potential customer (*i.e.* CVS), and proved incapable of remediating issues that resulted in misdirection and/or loss of payments due HYD. Despite nominally discharging the chief operating officer function for HYD, Mr. Edelstein refused to take responsibility for any of its operational problems.**

**HYD USA, LLC's lack of performance resulted in HYD USA, LLC running out of cash and access to further investment capital in mid-2016.**

13. If you contend that Plaintiff did not meet the definition of "employee" under the Connecticut Minimum Wage Act and/or the Fair Labor Standards Act, describe-state fully and specifically the complete factual basis for that contention.

**RESPONSE:   Factors militating against Mr. Edelstein's status as an "employee" of HYD, rather than an independent contractor, include:  he worked out of his home; he set his own hours and schedule; he used his own equipment (*e.g.*, phones and computer); he did not supervise other HYD employees; he purported to introduce the ABJP, LLC investment opportunity to Lucas Brand Equity LP and provide financial modeling in his capacity as "Founder and CEO" of The Logical Step LLC, an independent consulting entity; and he was expected to apply the skill and initiative of an independent brand consultant and "HBW specialist and revenue generator".**

13

## Verification

I, Jay S. Lucas, hereby verify under pain and penalty of perjury that the foregoing supplemental responses to interrogatories are true and correct to the best of my information, knowledge and belief.

Executed at New York, New York this 5th day of January 2018.

_____
Jay S. Lucas

## **CERTIFICATION**

I hereby certify that on January ___, 2018 a copy of the foregoing Supplemental Interrogatory responses was served electronically on counsel for the plaintiff as follows:

Mr. William G. Madsen @   wmadsen@mppjustice.com
Mr. Todd D. Steigman   @  tsteigman@mppjustice.com
Ms. Magdalena B. Wiktor @   mwiktor@mppjustice.com
Ms. Claire M. Howard @   choward@mppjustice.com

/s/ *James C. Graham*
James C. Graham, Esq.
NEUBERT, PEPE & MONTEITH, P.C.